Walter D. Clapp
**Honor Coin Law, PLLC**
5 Pepsi Drive, Suite 107
P.O. Box 2043
Red Lodge, MT 59068
Tel: 406-426-1424
Fax: 406-578-4987
    *Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES FOR THE L&W SUPPLY CORPORATION, a Delaware Corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| -vs- | **(Breach of Contract; Personal Guaranty; Miller Act)** |
| APEX MULTIFAMILY BUILDERS LLC, a Texas limited liability company; GREG WELCH, an individual; MARVIN CHAVEZ, an individual; BHATE ENVIRONMENTAL ASSOCIATES, INC. a Tennessee corporation; BERKLEY INSURANCE COMPANY, a Delaware company | |
| Defendants. | |

Plaintiff, for its claims against Defendants, alleges as follows:

**JURISDICTION/VENUE**

1.  Plaintiff is a foreign corporation authorized to do business within

Wyoming.

2.      Defendant Apex Multifamily Builders LLC ("Apex") is a Texas limited liability company, who caused the effect in Laramie County, Wyoming, as more fully set out below.

3.      Defendant Greg Welch ("Welch") is, upon information and belief, a resident of the State of Texas who personally guaranteed the underlying obligation which was performed and became due in Laramie County, Wyoming.

4.      Defendant Marvin Chavez ("Chavez") is, upon information and belief, a resident of the State of Texas who personally guaranteed the underlying obligation which was performed and became due in Laramie County, Wyoming.

5.      Defendant Bhate Environmental Associates Inc. ("Bhate") is a Tennessee corporation who caused the effect in Laramie County, Wyoming, as more fully set out below.

6.      Defendant Berkley Insurance Company ("Berkley") is a Delaware company who caused the effect in Laramie County, Wyoming, as more fully set out below.

7.      This Court has subject matter jurisdiction because Plaintiff's claims include a federal question, specifically, a claim based upon the Miller Act, 40 U.S.C. § 3133.

8.      This Court has personal jurisdiction over the Defendants and subject matter jurisdiction over the issues alleged herein. Venue is proper in this court.

**COUNT ONE**
**(Breach of Contract)**
**(As to Apex)**

9.      Plaintiff incorporates all allegations within paragraphs 1 - 8 as if more fully set forth herein.

10.     Prior to the commencement of this action, Defendant Apex submitted to Plaintiff its written Application for Credit, which application was accepted and approved by Plaintiff. A copy of the written Application for Credit (with sensitive personal data excised), is attached hereto as Exhibit A and incorporated fully herein by reference.

11.     After execution of the Application for Credit, Plaintiff sold and delivered to Defendant Apex, and Defendant Apex purchased from Plaintiff supplies including labor, services, material, machinery, fixtures or tools and agreed to pay therefore the sum of $86,183.22, plus interest at the rate of 18% per annum from March 1, 2025, until paid, as depicted in the account Statement attached hereto as Exhibit B.

12.     The principal balance of $86,183.22 represents the agreed value of said labor, services, material, machinery, fixtures or tools that remains due and owing to Plaintiff despite demand for payment of said due and owing amount.

13.     This is an action arising out of an express written contract, which incorporates a Credit Application with an express attorneys' fees provision, and under it, Plaintiff is entitled to its reasonable attorneys' fees for the bringing of this action.

14.     That all conditions precedent and subsequent to the liability of Defendant Apex to Plaintiff have been performed or have occurred.

**COUNT TWO**
**(Personal Guaranty)**
**(As to Greg Welch & Marvin Chavez)**

15.      Plaintiff incorporates all allegations within paragraphs 1-14 as if more fully set forth herein.

16.     On or about November 9, 2023, Defendants Welch and Chavez agreed to guaranty payment of all sums due from Defendant Apex to Plaintiff L&W Supply Corporation. A true and correct copy of the Personal Guaranty signed by Defendants Mr. Welch and Mr. Chavez is attached hereto as Exhibit A.

17.     Due to the guaranty, Defendants Welch and Chavez owe the principal sum of $86,183.22, plus interest at the rate of 18% per annum from November 9, 2023 until paid.

18.     This is an action arising out of an express written contract, with an express attorneys' fees provision, and under it, Plaintiff is entitled to its reasonable attorneys' fees for the bringing of this action.

19.     That all conditions precedent and subsequent to the liability of Defendants Mr. Welch and Mr. Chavez, as guarantors, to Plaintiff have been performed or have occurred.

**COUNT THREE**
**(Miller Act)**
**(As to Apex Multifamily Builders LLC, Bhate Environmental Associates, Inc., & Berkley Insurance Company)**

20.     Plaintiff incorporates all allegations within paragraphs 1 – 19 as if more fully set forth herein.

21.     Prior to the commencement of this action, Defendant Bhate Environmental Associates, Inc. entered into a contract with a representative of the U.S. Army Corps of Engineers for construction and/or renovation work on the F.E. Waren

Air Force Base Dog Kennel, a Federal Public Works Project located at 6800 Central

Ave. Cheyenne, Wyoming 82005 ("F.E. Waren Air Force Base Project").

22.     In furtherance of the aforesaid contract, and as required by the Miller Act,

Defendant Bhate, as principal, and Defendant Berkley Insurance Company, as surety,

executed a Standard Form of Payment Bond, said bond denoted with contract number

FA890317D0014, to protect materialman on the F.E. Waren Air Force Base Project. The

above-referenced Bond was subsequently accepted by the contracting authority. A true

and correct copy of this Bond is attached hereto as Exhibit C and incorporated fully

herein by reference.

23.     Thereafter, Bhate, as general contractor, entered into a contract with

Apex, as subcontractor, whereby Apex agreed to perform certain subcontracting services

for Bhate on the F.E. Waren Air Force Base Project.

24.     As set out more fully above, Plaintiff has supplied materials and supplies

to Apex for use on the F.E. Waren Air Force Base Project, including drywall, metal,

ceiling systems and related building materials.  Currently, Plaintiff is owed $86,183.22,

plus interest at a rate of 18% per annum from March 1, 2025, until paid, after deducting

all payments and just credits, for the services, materials, and supplies furnished, demand

for which sum having been made, no part having been paid, the same being just, due and

owing.

25.     Plaintiff sent out, and Defendants Apex and Bhate timely received, the

required statutory 90-day written notices. Copies of this notice is attached hereto as

Exhibit D. A supporting affidavit and the return receipts are attached and Exhibit E.

26.     Pursuant to the Miller Act, the above-referenced Payment Bond, denoted with contract number FA890317D0014, was executed for the protection of parties such as Plaintiff L&W Supply Corporation, who provided services and furnished materials to Bhate's subcontractor, Apex, for use in the F.E. Waren Air Force Base Project, who remain unpaid.

27.     A period of more than 90 days but less than one year has expired from the date said goods and services were last furnished by Plaintiff to Apex. Plaintiff is a bona fide unpaid claimant of Apex.  Accordingly, Plaintiff is entitled to recover against Bhate and Berkley pursuant to the Payment Bond denoted with contract number FA890317D0014.

28.     Plaintiff, pursuant to the terms of its contract with Apex, and/or the applicable law, is entitled to an award of prejudgment and post-judgment interest and an award of its prejudgment and post-judgment attorneys' fees incurred herein and the prosecution of this action and the collection of any judgment entered herein.

WHEREFORE, Plaintiff prays for Judgment as follows:

1.     On Count One of its Complaint against Defendant Apex Multifamily Builders LLC, in the principal sum of $86,183.22 together with interest thereon at the rate of 18% per annum from March 1, 2025, until paid, Plaintiff's costs incurred herein and all accruing costs, together with Plaintiff's reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

2.     On Count Two of its Complaint against Defendants Welch and Chavez, in the principal sum of $86,183.22, together with interest thereon at the rate of 18% per

annum from March 1, 2025, until paid, Plaintiff's costs incurred herein and all accruing

costs, together with Plaintiff's reasonable attorneys' fees, and such other and further

relief as the Court may deem just and proper.

3.     On Count Three of its Complaint against Defendants Apex Multifamily

Builders LLC, Bhate Environmental Associates, Inc., and Berkley Insurance Company

for the principal sum of $86,183.22, together with interest thereon at the rate of 18% per

annum from March 1, 2025, until paid, Plaintiff's costs incurred herein, and all accruing

cots, together with Plaintiff's attorneys' fees and such other and further relief as the Court

may deem just and proper.

DATED this ___2nd___ day of July, 2025.

_____
Walter D. Clapp
Honor Coin Law, PLLC
*Attorney for Plaintiff*

# EXHIBIT A

## 1. TELL US ABOUT YOUR COMPANY

### Type of Ownership

☐ Partnership  ☐ Corporation  ☐ Proprietorship  ☑ LLC (attach list of members)

Trade/Business Name **Apex Multifamily Builders, LLC**

*"Buyer"*

Address 1 **3001 S. Lamar Blvd, Suite 300**

*Attach Business Card or Complete*

Address 2 **Austin TX 78704**

| City | State | Zip |

Phone **737-209-0077**    Fax

Cell Phone    Email **invoice@apex-multifamily.com**

State Contractors License # (if applicable) **N/A**

Have you purchased from L&W Supply before?  Where

Estimated Monthly Purchases **7000.00**

Year Business Started **2021**    Federal Tax I.D.# ▮▮▮▮▮

If Tax Exempt - Attach Certificate ☐ Attached

Do You Issue a Purchase Order ☑ Yes ☐ No

Person to Contact Regarding Accounts Payable: **Leesa May**

at Phone **737-209-0077**

### Owners and/or Officers Information:

Name **Greg Welch**    Title **Managing Member**

SSN # ▮▮▮▮▮    Address ▮▮▮▮▮

City ▮▮▮▮▮    State    Zip ▮▮▮▮▮

Date of Birth    County

Driver's License #

Name **Marvin Chavez**    Title **Member**

SSN # ▮▮▮▮▮    Address ▮▮▮▮▮

City ▮▮▮▮▮    State    Zip ▮▮▮▮▮

Date of Birth    County

Driver's License #

### Bank Information:

Name of Bank **Bank of America**

Address **5207 Kyle Center Parkway, Kyle TX**    Phone

### Major Trade References:

Name **Sherwin Williams**

Address **brian.p.allen@sherwin.com**

Phone    Fax

Name **Daltile**

Address **Kristine.Wofford@daltile.com**

Phone    Fax

Name **City Electric Supply**

Address **cesreceivables@cityelectricsupply.com**

Phone    Fax

### Agreement:

Buyer authorizes all persons, institutions, organizations, companies and credit reporting agencies to furnish all pertinent information, including commercial and consumer credit reports, requested from time to time by L&W Supply. The undersigned and Buyer, if different, agree that that the information given is true and no unfavorable information has been omitted. The extension of credit hereunder, the amount of credit and the cancellation or reduction of credit shall be within the sole discretion of L&W Supply. Buyer agrees to be bound by L&W Supply's Credit Agreement and Purchase Agreement and acknowledges receipt of same. Each undersigned individual who is either a partner of the Buyer as credit applicant or a sole proprietorship of the Buyer as credit applicant, recognizing that his orher individual credit history may be a factor in the evaluation of the credit history of the buyer, hereby consents for and authorizes L&W Supply to obtain and use consumer credit reports for each undersigned individual, from time to time as may be needed, to evaluate the credit of Buyer.

## 2. SIGN HERE (acknowledges & agrees to be bound by attached terms & conditions)

Signature *Leesa May*    Date **11/9/2023**

Print **Leesa May**

## 3. YOUR PERSONAL GUARANTY

Giving us your personal guaranty will speed the process of approving your application.

### Continuing Guaranty

I (we) the undersigned understand that the information furnished you is for the purpose of obtaining credit from your company, that I am (we are) authorized, in my (our) capacity, to bind my (our) company accordingly. I (we) the undersigned, hereinafter referred to as guarantors, do jointly, severally, and unconditionally guarantee and promise to promptly pay when due any and all indebtedness of Buyer to L&W Supply, together with any late payment charge that may accrue thereon, regardless of how such indebtedness is , incurred whether such indebtedness is direct or indirect, absolute or contingent, due or to become due, or exists now or arises hereafter. In addition, the Guarantor(s) agree to pay all costs of collection, legal expenses and attorney's fees paid or incurred by L&W Supply in the collection of Buyer's indebtedness and in enforcing this Continuing Guaranty. The foregoing indebtedness, principal, interest, costs, expenses and fees are hereinafter called the "Indebtedness." Each undersigned guarantor agrees to be bound by L&W Supply's Terms and Conditions of Continuing Guaranty.

Each undersigned personal guarantor, recognizing that his or her individual credit history may be a necessary factor in the evaluation of this Continuing Guaranty, hereby consents for and authorizes L&W Supply to obtain and use consumer credit reports for each undersigned, fromtime to time as may be needed to evaluate the credit of Buyer and/or the undersigned.

## 4. GUARANTORS SIGN HERE

Complete Legal Signature *Greg Welch*

Name **Greg Welch**

| First | Middle | Last |

Home Address ▮▮▮▮▮

| City | State | Zip |

Phone    SSN # ▮▮▮▮▮

Complete Legal Signature

Name **Marvin Chavez**

| First | Middle | Last |

Home Address ▮▮▮▮▮

| City | State | Zip |

Phone    SSN # ▮▮▮▮▮

**L&W Supply Corporation**

Store Use Only

Sales Associate

Sales#    Branch#

LWCredit/Rev. 1-19

# L&W SUPPLY CORPORATION CREDIT AGREEMENT

As a condition to the election of L&W Supply Corporation a Delaware corporation with its principal place of business at 300 South Riverside Plaza, Suite: 200 South, Chicago, IL 60606 (hereinafter, "Seller") to extend credit to Buyer, Buyer has executed Seller's Credit Application and agrees to the following terms and conditions for all purchases made by Buyer from Seller or any of its subsidiaries. All purchases by Buyer from Seller are made pursuant to this Credit Agreement, the Seller Credit Application, and Seller Purchase Agreement. The terms and conditions of the Seller Credit Application and the Seller Purchase Agreement are incorporated by reference herein. Any payments made through Seller's Internet-based Invoice Gateway (more information at http://www.lwsupply.billtrust.com) are also subject to the terms and conditions of the Invoice Gateway, which Buyer hereby acknowledges and accepts. The Credit Application, Credit Agreement, the Purchase Agreement and the Invoice Gateway terms and conditions (if applicable) together constitute the entire agreement between Seller and Buyer and will be collectively referred to from time to time as the Agreement. In the event of any conflict in the terms of the aforementioned, the terms of the Seller Purchase Agreement will control.

**A. General Terms and Conditions.**

1. Buyer will pay each invoice in full in accordance with the terms of the particular Purchase Agreement, invoice, or other shipping document, with or without Buyer's signature. In the event Buyer fails to make payment when due, Buyer will pay, in addition to the invoice amount, a monthly late payment charge of 1.5%. Seller reserves the right to change such charges from time to time in its sole discretion and without notice. All payments are due within terms. Buyer agrees that should the late payment charge be deemed by a court of competent jurisdiction to violate any law, Buyer's sole remedy against Seller for such violation will be the application of any late payment charge paid in excess of the maximum rate allowable by law toward the unpaid account balance (or a refund of such excess if no account balance remains unpaid).

2. Buyer agrees to pay all costs of collection by Seller of any amounts due hereunder, including actual attorney's fees. Buyer further agrees that, in the event any action arising out of or related to the Agreement between Buyer and Seller, and Seller prevails, Buyer will pay Seller its actual attorney's fees and other costs incurred as a result of or in connection with such action. To the extent state law limits the recoverability of attorney's fees, Seller will be entitled to recover its fees up to the maximum allowed by state law.

3. Seller will have the sole discretion and complete right to apply any payment received from Buyer hereunder in any manner that Seller deems proper. Unless otherwise specified in the remittance advice, Seller may apply payments first to late payment charges, service charges, shipping charges, attorney's fees, or any other applicable charge, in any order, before applying the remainder of any such payments toward Buyer's principal account balance.

4. Buyer represents and warrants that Buyer is not a "consumer" as defined in the Federal Consumer Credit Protection Act, or any other consumer credit laws (Federal, State or Local), and Buyer waives all rights granted to consumers under the Federal Consumer Credit Protection Act, and other Federal, State and Local laws pertaining to "consumer" rights. Buyer further represents and warrants that all purchases made from Seller and any credit extended hereunder will be used solely for business and commercial purposes. Buyer further represents and warrants that any purchases from Seller of "consumer products" as defined in the Magnuson Moss Act or any similar law are being made (i) for resale, (ii) for use in commercial structures, or (iii) for use in the construction of a new residential structure or a substantial addition or re-model to an existing residential structure. Buyer acknowledges and agrees that Seller is a distributor, not a manufacturer, and does not provide warranties on the goods it merely distributes.

5. If this Credit Application and Credit Agreement is executed by a corporation, LLC, partnership or other business entity or company ("Company"), the undersigned individual represents and warrants that the Company has the power to enter into this Agreement, the execution of this Agreement by the undersigned has been duly authorized by the Company and this Agreement is in the best interest of the Company.

6. **Governing Law:** Any action arising out of or related to the Agreement will be brought, at Seller's sole discretion, in a court of law or equity in a county in which the pertinent Seller Branch is situated or, in the county in which the project for which the goods are used or to be used is located, or where an action between Seller and a third party is pending that concerns the subject matter of the agreement. The Agreement will be governed by and construed and enforced in accordance with the procedural and substantive laws of the State where the action is brought. BUYER WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY REGARDING ANY AND ALL DISPUTES ARISING OUT OF THIS AGREEMENT, subject to the law of the jurisdiction where the action is pending. The Agreement contains the full, final and exclusive statement of the Agreement between Seller and Buyer, and no terms and conditions other than those stated herein, and no agreement or understanding in any way purporting to modify the terms and conditions thereof, will be binding on Seller without Seller written consent. Waiver by Seller of any terms or conditions of this contract or waiver of any breach thereof will not be construed as a waiver of any other terms, conditions, or breach. Determination that any provision of the Agreement is illegal or invalid will not affect the validity or enforceability of the remaining provisions of the Agreement.

7. **Buyer agrees to provide Seller with no less than thirty days prior written notice by Certified or Registered Mail of any change in Buyer's name, address, ownership, or form of business entity.**

8. All notifications from Buyer should be addressed to the Seller branch from which Buyer has purchased the most goods in the last 90 days. A copy of all notifications should also be sent to the Executive Director of Customer Financial Services at 300 South Riverside Plaza, Suite: 200 South, Chicago, IL 60606.

9. Conflicting Provisions and Order of Precedence: The terms and conditions noted in this Agreement will govern and apply to any and all purchases, whether for materials and/or services made by the Buyer from Seller or any division, affiliate and/or predecessor thereof, at any time whatsoever, whether past, present, or future. In the event the terms and conditions noted herein conflict with terms and conditions of any other existing or future agreement between Seller and Buyer, including, without limitation, any purchase orders or other documents issued by Buyer relating to any material purchases, then in each instance, the terms and conditions of Agreement noted herein shall prevail in all respects, notwithstanding any language in such other agreement or document to the contrary. Buyer hereby acknowledges that this provision is a material inducement to Seller to establish an open account business relationship with Buyer and extending any and all payment terms or credit to the Buyer.

10. **Counterparts:** This Credit Agreement may be executed in counterparts each of which will constitute an original and all of which taken together will constitute a single agreement. Delivery of an electronic image and/or facsimile copy of this executed Agreement or any other document or of an executed counterpart signature page to this Agreement by facsimile, email or other electronic method, or delivery of an email communication from an authorized representative of a party providing such party's acceptance or approval of a document previously transmitted to such party by electronic means, will be binding and considered a delivery of an executed original of such document.

11. **Indemnity: TO THE FULLEST EXTENT PERMITTED BY LAW, BUYER AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD SELLER (INCLUDING ITS AFFILIATED COMPANIES, AGENTS, OFFICERS, AND EMPLOYEES, COLLECTIVELY REFERRED TO AS THE "INDEMNITEE") FREE AND HARMLESS FROM AND AGAINST ANY AND ALL EXPENSES, CLAIMS, DEMANDS, CAUSES OF ACTIONS, SUITS OR OTHER LITIGATION**

**(INCLUDING, WITHOUT LIMITATION, CLAIMS FOR ACTUAL, STATUTORY, PUNITIVE OR EXEMPLARY DAMAGES, AND ALL COSTS THEREOF AND ATTORNEYS' FEES) OF EVERY KIND AND CHARACTER ON ACCOUNT OF PROPERTY DAMAGE, BODILY INJURY, SICKNESS, DEATH OR OTHER LOSS (HEREIN COLLECTIVELY REFERRED TO AS THE "LOSS") IN ANY WAY OCCURRING, INCIDENT TO, ARISING OUT OF OR IN CONNECTION WITH (1) BREACH OF THE WARRANTIES AND REPRESENTATIONS PROVIDED HEREIN; (2) ANY MISREPRESENTATIONS MADE BY BUYER HEREIN; OR (3) ANY BREACH OF OR DEFAULT UNDER THE CREDIT APPLICATION AND AGREEMENT.**

**DEFAULT:** Subject to the limitations of applicable law, Seller may declare Buyer to be in default under this Agreement if Buyer: (a) fails to make any payment when due; (b) violates any part of this Agreement or any other agreement Buyer has with Seller; (c) becomes the subject of bankruptcy, receivership or other insolvency proceedings; (d) exceeds the credit limit on Buyer's account; or (e) Seller reasonably believes itself to be insecure. After Buyer's default, and subject to the limitations of applicable law, Seller has the right, in its sole discretion, to: (i) reduce Buyer's credit limit; (ii) terminate Buyer's account, in which case the terms of this Agreement will apply until full payment owing on Buyer's account is received, including finance charges which will continue to accrue until the date of full payment; (iii) require immediate payment of Buyer's entire account balance, all accrued but unpaid finance charges (if applicable), and all fees and other charges listed in this Agreement; and (iv) bring an action to collect all amounts owed.

**B. Terms and Conditions of Continuing Guaranty.**

For value received, and for the purpose of influencing Seller to extend credit or other financial accommodations, or to continue to extend credit or other financial accommodations, to Buyer, each person or entity who signed the Seller's Credit Application as guarantor (hereinafter "Guarantor", whether one or more) hereby guarantees jointly and severally, without limitation as to amount, the prompt payment when due of any and all indebtedness of Buyer to Seller, together with any late payment charge that may accrue thereon, regardless of how such indebtedness is incurred, whether such indebtedness is direct or indirect, absolute or contingent, due or to become due, or exists now or arises hereafter, on the terms and conditions herein (the "Guaranty"). In addition, Guarantor agrees to pay all costs of collection, legal expenses and attorney's fees paid or incurred by Seller in the collection of Buyer's indebtedness and in enforcing this Guaranty. The foregoing indebtedness, principal, interest, costs, expenses and fees are hereinafter called the "Indebtedness".

1. No extension or renewal of time of payment of the Indebtedness, no release or surrender of any security for the Indebtedness of this Guaranty, no release of any person primarily or secondarily liable on the Indebtedness and no delay in enforcement of payment of the Indebtedness under this Guaranty will affect the liability of Guarantor hereunder. Any and all payments upon the Indebtedness made by Buyer, Guarantor, or any other person and the proceeds of any and all collateral or security for any of the Indebtedness may be applied by Seller upon such of the items of the Indebtedness as Seller will determine in its sole discretion.

2. Guarantor waives notice of acceptance of this Guaranty, notice of the extension of creditor financial accommodation to Buyer, notice of the amount of Indebtedness which may exist from time to time, notice of any extension of the time for payment, demand for payment, notice of non payment, protest, notice of protest, and all other notices of every kind and nature, and agrees that this Guaranty may be enforced against the undersigned without any prior or concurrent proceeding or action against Buyer. The obligations of the Guarantor will not be affected by: (a) the failure of Seller to assert any claim or demand or to enforce any right or remedy against the Buyer or another Guarantor; or (b) any extension, modification, or renewal of the terms or amount of the Indebtedness.

3. This Guaranty is a continuing guaranty and will remain in full force and will be binding upon Guarantor and Guarantor's heirs, executors, administrators, and assigns notwithstanding the death of one or more of the undersigned, until after the later of (a) expiration of thirty (30) days after written notice by Certified or Registered Mail of revocation is received by Seller as referenced in Section 12 and (b) all of the Indebtedness owed to Seller by Buyer will have been fully paid (including all late payment charges and attorneys fees which accrue after expiration of the 30 day period).

4. This Guaranty is the joint and several obligation of each person and entity that signs the Guaranty.

5. If this Guaranty is executed by a corporation, LLC, partnership or other business entity or company ("Entity"), the undersigned represents and warrants that the Entity has the power to make this Guaranty, the execution by the undersigned of the Guaranty on behalf of the Entity has been duly authorized and this Guaranty is in the best interest of the Entity.

6. Guarantor hereby waives and renounces any and all homestead or exemption rights Guarantor may have under or by virtue of the constitution or laws of the state of Guarantor's domicile, or of any other state or of the United States as against the liability and obligation hereby created. Guarantor transfers and assigns to Seller an amount of any homestead or exemption that may be allowed to Guarantor, including such homestead or exemption as may be set apart in bankruptcy, equal to the amount necessary to pay this obligation in full together with all costs of collection.

7. Guarantor further agrees to the extent that the Buyer makes a payment or payments to Seller or Seller receives any proceeds or collateral, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Buyer, its estate, trustee, receiver, or any other party including without limitation the Guarantor, under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, Buyer's obligations, or the part thereof which has been paid, reduced or satisfied by such amount, will be reinstated and continued in full force and effect as of the date such initial payment, reduction or satisfaction occurred.

8. Guarantor waives all claims for subrogation, reimbursement, exoneration, contribution and indemnification with respect to sums paid or payable to Seller by Guarantor. Guarantor hereby waives any right to enforce any remedy that Seller now has or may hereafter have against the Buyer. Guarantor further agrees that any and all claims of Guarantor against Buyer will be subordinate and subject in right of payment to the prior payment in full of all principal, interest, reasonable costs of collection (including attorneys' fees and expenses), and any other liabilities or obligations owing to Seller by Buyer.

9. Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable by a court of competent jurisdiction, all other provisions will remain effective.

10. All obligations are payable and performable at the address of Seller as identified in Section 12 below, unless Seller provides notice to Buyer or Guarantor of a change of address.

11. Guarantor authorizes all persons, institutions, organizations, companies and credit reporting agencies to furnish any and all information, including commercial and consumer credit reports, regarding Guarantor requested from time to time by Seller.

12. All notifications should be addressed to the Seller branch from which Buyer has purchased the most goods in the last 90 days. A copy of all notifications should also be sent to the Executive Director of Customer Financial Services at Seller's National Support Center at 300 South Riverside Plaza, Suite: 200 South, Chicago, IL 60606.

# L&W SUPPLY CORPORATION PURCHASE AGREEMENT TERMS & CONDITIONS OF SALE

1. Any purchase made on credit requires that Buyer have on file with L&W Supply Corporation, ('L&W Supply') an approved Credit Application. Buyer further confirms Buyer's consent to L&W Supply's Credit Agreement, the terms and conditions of which have been read by Buyer and are incorporated by reference herein.

2. L&W Supply acknowledges and accepts Buyer's order, L&W Supply's acknowledgement and acceptance is expressly conditioned upon Buyer's acceptance of the terms and conditions herein. No terms or conditions other than those stated herein, whether contained in Buyer's purchase order, shipping release, or elsewhere, and no written or oral agreement that purports to vary these terms and conditions shall be binding upon L&W Supply unless hereafter set forth in a writing signed by L&W Supply's authorized representative. All negotiations, proposals and representations are merged herein, and this writing constitutes the complete and exclusive statement of the terms and conditions of this Purchase Agreement between Buyer and L&W Supply. In the event Buyer fails to accept this Purchase Agreement in writing, Buyer's consent to the terms and conditions herein shall be conclusively presumed, either from Buyer's failure to object in ten days in writing or from Buyer's acceptance or use of the material delivered hereunder.

3. In any case, in which L&W Supply makes delivery, Buyer hereby agrees to pay L&W Supply's customary shipping charges. Delivery shall be made at the project site or other place of delivery adjacent to the closest public right of way. The risk of loss shall pass to Buyer upon delivery of the goods should Buyer not be present to accept' delivery. Buyer hereby authorizes L&W Supply to unload the goods and leave them at the delivery destination. Buyer shall release L&W Supply and shall indemnify and hold harmless L&W Supply from and against any and all claims demands, actions, causes of action, cost, expenses, and attorney's fees arising out of or in connection with any and all injury including death, to any person or persons (whether third parties or agents, servants, or employees of Buyer), any and all damages to or loss of any property (whether belonging to Buyer or a third party), and any and all other damages recognized at law or in equity caused in whole or in part by or in any way related to the delivery of goods onto the project site, whenever such delivery is made in accordance with or pursuant to Buyer's instructions.

4. Buyer shall have the right to inspect the goods upon arrival. Buyer's inspection rights shall expire 24 hours after the arrival of the goods at the delivery destination. A failure to make inspection within that time shall waive notice of any defect which reasonable inspection would have revealed. A rejection of the goods by Buyer shall not be effective unless it is made and written notice thereof is given to L&W Supply within 5 calendar days of delivery.

5. L&W Supply shall have the right, without prejudice to any, other rights, to suspend further deliveries of any items purchased if Buyer defaults in payment of any amounts due, or whenever L&W Supply may deem itself insecure as to Buyer's performance, until Buyer remedies such default or provides adequate assurance to L&W Supply of Buyer's ability to perform.

6. Unless otherwise provided by law, L&W Supply may require Buyer to pay or to reimburse L&W Supply for any tax (except income tax) which now or hereafter may be imposed by any taxing authority with respect to the items purchased or the sale, purchase, manufacture, delivery or use thereof.

7. L&W Supply reserves the right to discontinue, without liability hereunder, deliveries of any merchandise, the manufacture, use and/or sale of which in the opinion of L&W Supply would infringe any patent now or hereafter issued and under which L&W Supply is not licensed.

8. Where Buyer requires tests or inspection not regularly provided by L&W Supply, L&W Supply may charge Buyer for the actual cost of such test or inspections.

9. An order may be terminated by Buyer before completion only with L&W Supply's written consent, in which event Buyer shall pay to L&W Supply:
   (a.) The contract price for all products, which shall have been delivered or completed prior to receipt of notice of termination.
   (b.) All actual costs incurred by L&W Supply in connection with the uncompleted portion of the order.
   (c.) Cancellation charges, it any, of L&W Supply because of its commitments, made under the order.

10. Buyer shall not hold L&W Supply responsible for any delay caused in whole or in part by circumstances beyond L&W Supply's reasonable control, including but not limited to, force majeure, fires, or accidents; strikes or other differences with workmen: war (whether declared or undeclared), riots, or embargoes; delays by carriers; delays in shipment or receipt of materials from suppliers; or any legislative, administrative or executive law, order, or requisition of the federal or any state or local government or any subdivision, department, agency, officer or official thereof. L&W Supply shall not be liable in any event for any special, incidental, or consequential damages caused by L&W Supply's failure or delay in performance or delivery due to any cause whatsoever, it L&W Supply is unable, due to any cause beyond L&W Supply's control, to supply Buyer's total demand for products. L&W Supply may allocate its available supply among L&W Supply's customers, including L&W Supply's branches and affiliates, in any manner L&W Supply deems reasonable.

11. L&W Supply shall assign or transfer to Buyer any assignable or transferable manufacturer's warranties, it any, applicable to this purchase, in lieu of all other warranties, express or implied. L&W Supply MAKES NO OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. There is no warranty that extends beyond the description on the face of this Purchase Agreement.

12. L&W Supply shall not be liable under any circumstances for consequential or incidental damages arising out of, or in connection with, this Purchase Agreement. The liability of L&W Supply is limited to repayment of the purchase price of items not conforming to the description on the face hereof upon return of the items. This remedy is the exclusive remedy of Buyer under this Purchase Agreement. L&W Supply shall not be liable for any damages attributable to product abuse, misuse, neglect or any other cause, which is not the fault of L&W Supply.

13. Buyer agrees to indemnify and hold harmless L&W Supply from and against any and all claims, demands, actions, causes of action, costs, expenses, and attorney's fees arising out of or in connection with any and all injury, including death, to any person or persons (whether third parties or agents, servants or employees of Buyer), any and all damages to or loss of any property (whether belonging to Buyer or to a third party), and any and all other damages recognized at law or in equity, caused by or resulting from in whole or in part, any act(s) or omission(s), negligent or otherwise, of Buyer, or any of Buyer's agents, servants, employees, subcontractors or customers. In the event that the applicable law prohibits enforcement of this clause as written, then and only then, this clause shall be modified to provide the maximum indemnification to L&W Supply, as indemnitee, allowable under that applicable law.

14. This Purchase Agreement shall be governed by and construed according to the laws of Wisconsin (without regard to internal principles of conflicts of law). Any action brought, upon or by reason of, this Purchase Agreement shall be brought, in L&W Supply's sole discretion, either in a court with jurisdiction over the county in which the L&W Supply branch is located, in a court with jurisdiction over the county in which the project for which the goods are to he used is located, or in a Court or before an arbitration panel where an action between L&W Supply and a third party is pending which concerns the subject matter of this Purchase Agreement. Buyer agrees that, in the event, any action is brought upon, or due to, this Purchase Agreement by either Buyer or L&W Supply, and L&W Supply prevails, Buyer shall pay L&W Supply's reasonable attorney's fees and other costs incurred because of or in connection with such action.

15. Waiver by L&W Supply of any terms or conditions of this contract or waiver of any breach hereof shall not be construed as a waiver of any other term, condition, or breach. Determination that any provision of this Agreement is illegal or invalid shall not affect the validity or enforceability of the remaining provisions of this Agreement.

16. Customer acknowledges and agrees that nothing herein binds L&W Supply to extend any credit to Customer. However, if L&W Supply does extend credit to Customer, L&W Supply reserves the sole discretion to establish the amount and terms of such credit. L&W Supply reserves the right to stop shipments that exceed credit limits and/or exceed or violate invoice terms established from time to time by L&W Supply in its sole discretion. If at any time, in L&W Supply's sole discretion, the financial condition of Customer is determined to be unsatisfactory to L&W Supply, L&W Supply reserves the right to require Customer to make payment for the goods and services in advance as a condition to L&W Supply's performance.

LWCredit/Rev. 1-19    L&W Supply and Nationwide Strength Local Commitment are registered trademarks.    ©2019 L&W Supply Corporation    Printed in the U.S.A.

# EXHIBIT B



**L&W Supply Corporation**
1 ABC Parkway Ste 941
Beloit, WI 53511
http://www.lwsupply.com
1-844-977-6785

# STATEMENT

| Customer Number | 148039-0001 |
|---|---|
| Statement Date | 02/28/25 |
| Total Amount Due | 89,967.03 |

Apex Multifamily Builders
3001 S Lamar Blvd
Austin, TX 78704

| CURRENT | 1-30 Days | 31 - 60 DAYS | 61 - 90 DAYS | OVER 90 DAYS | TOTAL AMOUNT DUE |
|---|---|---|---|---|---|
| 1,287.40 | 1,496.75 | 1,287.40 | 3,462.22 | 82,433.26 | 89,967.03 |

| TYPE | INVOICE DATE | INVOICE NUMBER | CUSTOMER PO | GROSS AMOUNT | DISCOUNT AVAILABLE | PAYMENT | NET AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| | | Ship-to: 000001 Apex Multifamily Builders | | | | | |
| IN | 11/18/24 | 1011723877-001 | The Parker | 3,420.53 | | | 3,420.53 |
| FC | 12/31/24 | FC1224-050000385 | | 51.31 | | | 51.31 |
| FC | 01/31/25 | FC0125-050000388 | | 260.66 | | | 260.66 |
| FC | 02/28/25 | FC0225-050000377 | | 51.31 | | | 51.31 |
| | | **TOTAL FOR Ship-to: 000001** | | **3,783.81** | | | **3,783.81** |
| | | Ship-to: 000004 FE Warren AFB Dog Kennel | | | | | |
| IN | 08/20/24 | 1011200843-001 | 2002-001 | 258.54 | | | 258.54 |
| IN | 09/23/24 | 1011571812-001 | Dog Kennel | 158.04 | | | 158.04 |
| IN | 09/25/24 | 1011611060-001 | Dog Kennel | 29.28 | | | 29.28 |
| IN | 09/26/24 | 1011615239-001 | Dog Kennel | 162.22 | | | 162.22 |
| IN | 09/26/24 | 1011619055-001 | Dog Kennel | 293.85 | | | 293.85 |
| IN | 09/27/24 | 1011632203-001 | Apex Multifamily | 833.62 | | | 833.62 |
| IN | 10/02/24 | 1011675462-001 | fe warren dog ke | 634.68 | | | 634.68 |
| IN | 10/08/24 | 1011738698-001 | Dog Kennel | 409.31 | | | 409.31 |
| FC | 11/01/24 | FC1024-000010470 | | 26.03 | | | 26.03 |
| FC | 11/30/24 | FC1124-050000301 | | 41.69 | | | 41.69 |
| FC | 12/31/24 | FC1224-050000316 | | 41.69 | | | 41.69 |
| FC | 01/31/25 | FC0125-050000328 | | 41.69 | | | 41.69 |
| FC | 02/28/25 | FC0225-050000325 | | 41.69 | | | 41.69 |
| | | **TOTAL FOR Ship-to: 000004** | | **2,972.33** | | | **2,972.33** |
| | | Ship-to: 000005 F.E. Warren Air Force Base | | | | | |
| IN | 08/06/24 | 1010990674-001 | FEWarrenAirforce | 11,873.59 | | | 11,873.59 |
| IN | 08/09/24 | 1010991462-001 | FEWarrenAirForce | 34,873.34 | | | 34,873.34 |
| IN | 08/12/24 | 1011038753-001 | FEWarrenAirForce | 11,624.75 | | | 11,624.75 |
| IN | 08/12/24 | 1011076564-001 | FEWarrenAirForce | 4,740.14 | | | 4,740.14 |
| IN | 08/16/24 | 1011171312-001 | FEWARRENAIRFORCE | 151.58 | | | 151.58 |
| IN | 08/19/24 | 1011076564-002 | FEWarrenAirForce | 2,750.18 | | | 2,750.18 |
| IN | 08/19/24 | 1011141727-001 | FEWarrenAirForce | 1,356.11 | | | 1,356.11 |
| IN | 08/26/24 | 1011141727-002 | FEWarrenAirForce | 1,051.96 | | | 1,051.96 |
| IN | 09/19/24 | 1011536383-001 | FEWarrenAirForce | 2,348.54 | | | 2,348.54 |
| IN | 09/30/24 | 1011506733-001 | FEWarrenAirForce | 8,857.50 | | | 8,857.50 |
| FC | 12/31/24 | FC1224-050001102 | | 1,194.40 | | | 1,194.40 |
| FC | 01/31/25 | FC0125-050001035 | | 1,194.40 | | | 1,194.40 |
| FC | 02/28/25 | FC0225-050000977 | | 1,194.40 | | | 1,194.40 |

TYPE KEY:   IN = INVOICE   CA = CASH ON ACCOUNT   CI = CREDIT INVOICE   FC = LATE CHARGE
CM = CREDIT MEMO   DP = DEPOSIT   DM = DEBIT MEMO

**VIEW AND PAY ONLINE:** https://lwsupply.billtrust.com   **ENROLLMENT TOKEN:** ZZM PTP SZW   **ACCOUNT #:** 148039-0001

**For proper credit, please tear off this remit slip and return with your payment and invoice payment details**

| Statement Date | Total Amount Due | Total Amount Paid |
|---|---|---|
| 02/28/25 | 89,967.03 | |
| Customer Number | Discount Available | Discount Taken |
| 148039-0001 | 0.00 | |

Bill To:
Apex Multifamily Builders
3001 S Lamar Blvd
Austin, TX 78704

Make Checks Payable & Remit To:
L&W Supply Corporation
P.O. Box 843224
Dallas, TX 75284-3224

Page 1 of 2



L&W Supply Corporation
1 ABC Parkway Ste 941
Beloit, WI 53511
http://www.lwsupply.com
1-844-977-6785

# STATEMENT

| Customer Number | 148039-0001 |
|---|---|
| Statement Date | 02/28/25 |
| Total Amount Due | 89,967.03 |

Apex Multifamily Builders
3001 S Lamar Blvd
Austin, TX 78704

| TYPE | INVOICE DATE | INVOICE NUMBER | CUSTOMER PO | GROSS AMOUNT | DISCOUNT AVAILABLE | PAYMENT | NET AMOUNT DUE |
|---|---|---|---|---|---|---|---|
| | **TOTAL FOR Ship-to: 000005** | | | **83,210.89** | | | **83,210.89** |

EVERYTHING **OUR CUSTOMERS** NEED TO BUILD AMERICA IS ON **OUR TRUCK**

# EXHIBIT C

0252395

| PAYMENT BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) July 6, 2023 | OMB Control Number: 9000-0045 Expiration Date: 8/31/2025 |
|---|---|---|

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 1 hour to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| Bhate Environmental Associates, Inc. 1608 13th Avenue, South Suite 300 Birmingham, AL 35205 | [ ] INDIVIDUAL    [ ] PARTNERSHIP    [ ] JOINT VENTURE [X] CORPORATION    [ ] OTHER (Specify) |
| | STATE OF INCORPORATION Tennessee |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| Berkley Insurance Company 475 Steamboat Road Greenwich, CT 06830 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 7 | 842 | 283 | 00 |
| | CONTRACT DATE 06/29/2023 | CONTRACT NUMBER FA890317D0014 FA461323F0040 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Sam Bhate Principal | 2. | | |

INDIVIDUAL SURETY(IES)

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | | (Seal) | |
| NAME(S) (Typed) | 1. | 2. | | |

CORPORATE SURETY(IES)

| SURETY A | NAME & ADDRESS | Berkley Insurance Company 475 Steamboat Road Greenwich, CT 06830 | STATE OF INCORPORATION DE | LIABILITY LIMIT $ 7,842,283.00 | Corporate Seal |
|---|---|---|---|---|---|
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Raymond M. Hundley Attorney-in-Fact | 2. | | |

| AUTHORIZED FOR LOCAL REPRODUCTION Previous edition is NOT usable | STANDARD FORM 25A (REV. 8/2016) Prescribed by GSA-FAR (48 CFR) 53.2228(c) |
|---|---|

**CORPORATE SURETY(IES)** *(Continued)*

| | | | STATE OF INCORPORATION | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

**STANDARD FORM 25A** (REV. 8/2016) **BACK**

No. BI-342b

POWER OF ATTORNEY
**BERKLEY INSURANCE COMPANY**
WILMINGTON, DELAWARE

NOTICE:  The warning found elsewhere in this Power of Attorney affects the validity thereof.  Please review carefully.

KNOW ALL MEN BY THESE PRESENTS, that BERKLEY INSURANCE COMPANY (the "Company"), a corporation duly organized and existing under the laws of the State of Delaware, having its principal office in Greenwich, CT, has made, constituted and appointed, and does by these presents make, constitute and appoint: *James T. Smith; Brook T. Smith; Jason D. Cromwell; Raymond M. Hundley; James H. Martin; or Deborah Neichter of Acrisure, LLC dba Smith-Manus of Louisville, KY* its true and lawful Attorney-in-Fact, to sign its name as surety only as delineated below and to execute, seal, acknowledge and deliver any and all bonds and undertakings, with the exception of Financial Guaranty Insurance, providing that no single obligation shall exceed **Fifty Million and 00/100 U.S. Dollars (U.S.$50,000,000.00)**, to the same extent as if such bonds had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office in their own proper persons.

This Power of Attorney shall be construed and enforced in accordance with, and governed by, the laws of the State of Delaware, without giving effect to the principles of conflicts of laws thereof.  This Power of Attorney is granted pursuant to the following resolutions which were duly and validly adopted at a meeting of the Board of Directors of the Company held on January 25, 2010:

> **RESOLVED,** that, with respect to the Surety business written by Berkley Surety, the Chairman of the Board, Chief Executive Officer, President or any Vice President of the Company, in conjunction with the Secretary or any Assistant Secretary are hereby authorized to execute powers of attorney authorizing and qualifying the attorney-in-fact named therein to execute bonds, undertakings, recognizances, or other suretyship obligations on behalf of the Company, and to affix the corporate seal of the Company to powers of attorney executed pursuant hereto; and said officers may remove any such attorney-in-fact and revoke any power of attorney previously granted; and further
>
> **RESOLVED,** that such power of attorney limits the acts of those named therein to the bonds, undertakings, recognizances, or other suretyship obligations specifically named therein, and they have no authority to bind the Company except in the manner and to the extent therein stated; and further
>
> **RESOLVED,** that such power of attorney revokes all previous powers issued on behalf of the attorney-in-fact named; and further
>
> **RESOLVED,** that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any power of attorney or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligation of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed.  The Company may continue to use for the purposes herein stated the facsimile signature of any person or persons who shall have been such officer or officers of the Company, notwithstanding the fact that they may have ceased to be such at the time when such instruments shall be issued.

IN WITNESS WHEREOF, the Company has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this 21ª day of MAY, 20 19.

Attest:                                                                Berkley Insurance Company

(Seal)    By _____              By _____
          Ira S. Lederman                                     Jeffrey M. Hafter
          Executive Vice President & Secretary     Senior Vice President

**WARNING: THIS POWER INVALID IF NOT PRINTED ON BLUE "BERKLEY" SECURITY PAPER.**

STATE OF CONNECTICUT )
                                      ) ss:
COUNTY OF FAIRFIELD    )

Sworn to before me, a Notary Public in the State of Connecticut, this 21ˢᵗ day of MAY, 2019, by Ira S. Lederman and Jeffrey M. Hafter who are sworn to me to be the Executive Vice President and Secretary, and the Senior Vice President, respectively, of Berkley Insurance Company.

MARIA C RUNDBAKEN
NOTARY PUBLIC
CONNECTICUT
MY COMMISSION EXPIRES
APRIL 30, 2024

_____
Notary Public, State of Connecticut

**CERTIFICATE**

I, the undersigned, Assistant Secretary of BERKLEY INSURANCE COMPANY, DO HEREBY CERTIFY that the foregoing is a true, correct and complete copy of the original Power of Attorney; that said Power of Attorney has not been revoked or rescinded and that the authority of the Attorney-in-Fact set forth therein, who executed the bond or undertaking to which this Power of Attorney is attached, is in full force and effect as of this date.

Given under my hand and seal of the Company, this 6th day of JULY, 2023.

(Seal)

_____
Vincent P. Forte

WARNING – Any unauthorized reproduction or alteration of this document is prohibited.  This power of attorney is void unless seals are readable and the certification seal at the bottom is embossed.  The background imprint, warning and verification instructions (on reverse) must be in blue ink.

**EXHIBIT D**

*Prepared for the Claimant by:*

**\* Asset Research Services, Inc.**
PO Box 7562  Chandler AZ  85246
Phone (480) 940-4290  (800) 783-9636
Fax (877) 853-0067(877) 853-0067

## FEDERAL MILLER ACT NOTICE OF INVOLVEMENT
Federal 40 U.S.C.A. 3133

**CLAIMANT**
L&W SUPPLY CORPORATION
PCID 7197 CHEYENNE
2508 E FOX FARM RD STE 6
CHEYENNE WY  82007-2559
(307) 637-3684

**PURCHASE CONTRACTOR**
APEX MULTIFAMILY BUILDERS
3001 S LAMAR BLVD STE 300
AUSTIN TX  78704-4799
(737) 209-0077
Certified #: 7196 9008 3950 2600 0852

**LENDER OR REPUTED LENDER**
\*\*\*\*\*\*\*\*\*\* BONDING INFORMATION REQUESTED \*\*\*\*\*\*\*\*\*\*

**GENERAL CONTRACTOR / PRIME CONTRACTOR**
BHATE ENVIRONMENTAL ASSOCIATES INC
1608 13TH AVE S STE 300
BIRMINGHAM AL  35205-5573
(205) 918-4000
Certified #: 7196 9008 3950 2600 0869

**ALSO NOTIFIED**

**OWNER OR REPUTED OWNER**
U.S. ARMY CORPS OF ENGINEERS, OMAHA DISTRICT
1201 NE LLOYD BLVD STE 400
PORTLAND OR  97232-1257

**RE:** Project Info: Project Name or Sub: F.E WARREN AFB DOG KENNEL,  Invoice/Job# or Amends: 1010990674,   - Supply and/or installation of DRYWALL, METAL, CEILING SYSTEMS & RELATED BUILDING MATERIALS at 6800 CENTRAL AVE CHEYENNE  WY  82005-3100  - LARAMIE County, WY

We notify you that L&W SUPPLY CORPORATION  is supplying and/or furnishing labor, services, materials, machinery, fixtures or tools, on the referenced project ,generally described as DRYWALL, METAL, CEILING SYSTEMS & RELATED BUILDING MATERIALS. The name of the person or the firm with whom claimant contracted is APEX MULTIFAMILY BUILDERS .  An estimate of the price of labor, services, materials, machinery, fixtures or tools furnished or to be furnished is $83,719.36 .

This is a **NOTICE OF INVOLVEMENT** and not a **CLAIM**.  In the event of non-payment a claim may be made against you and your bonding company.

This notice is sent in compliance with Federal 40 U.S.C.A. 3133

Dated:               JANUARY 6, 2025
Respectfully:     L Gauthier, Document Administrator
For:                  L&W SUPPLY CORPORATION
                        PCID 7197 CHEYENNE

*Asset Research Services, Inc. is ACTING ONLY AS LIMITED AGENT FOR THE CLAIMANT AND HAS NO AUTHORITY BEYOND THE PREPARATION OF DOCUMENTS NECESSARY TO IMPOSE A CLAIM OF LIEN. ALL INFORMATION CONTAINED WITHIN THIS NOTICE NEEDS VERIFICATION PRIOR TO FILING A LIEN. © Copyright 2025 Asset Research Services, Inc. All Rights Reserved*

Doc#2526912 XX_FMILL Rws#1075666 Batch#34500\1\11:05:54\Y          ORIGINAL

**EXHIBIT E**

# A F F I D A V I T

Luc Gauthier, being first duly sworn upon his oath, deposes and says:

I, Luc Gauthier, am Customer Support in the Sales Team of Asset Research Services, Inc. I am not a party in the above-captioned matter. I have personal knowledge as to the facts and issues set out within this Affidavit except for those I have stated on information and belief. If called as a witness, I could and would testify as follows:

1. On January 8, 2025, I caused a Notice of Involvement associated with the F.E Warren AFB Dog Kennell project the to be mailed to

    a. Apex Multifamily Builders, 3001 South Lamar Boulevard, Suite 300, Austin, Texas 78704-4799, via Certified Mail, item number 7196 9008 3950 2600 0852, which was then received on January 10, 2025 at 3:54 P.M. and signed by Leesa May; and

    b. Bhate Environmental Associates Inc., 1608 13th Avenue South, Suite 300, Birmingham, Alabama 35205-5573, via Certified Mail, item number 7196 9008 3950 2600 0869, which was then received on January 13, 2025 at 12:32 P.M.

Copies of the proof of mailing are attached.

/ / /

/ / /

/ / /

/ / /

Further Affiant Sayeth not.

By: _____

SUBSCRIBED AND SWORN to before me this 15ᵗʰ day of _June_ , 2025.

_____
NOTARY PUBLIC

My commission expires:

SHANNON HUSA
Notary Public
Commission Number 660532
Expires: November 26, 2027
Maricopa County

_11 - 26 - 2027_

*Date:* January 6, 2025
*Time:* 13:45
*Page:* 1

**DATED RECEIPT OF**
**CERTIFIED RETURN RECEIPT MAIL - ELECTRONIC**
Batch #: 34500

CHANDLER
JAN 06 2025
ANDERSEN SPRINGS
POSTMARK AND DATE OF RECEIPT

Name and Address of Sender: *Asset Research Services, Inc.*
*AZCLDP 81073*
*PO Box 7562*
*Chandler AZ  85246*

USPS Fees - Per Item
US Postage: $0.69
US Certified: $4.85
US Electronic RR: $2.62

| Name of Addressee, Street and Post Office Address | DocType | Doc # | | Certified Mail Number |
|---|---|---|---|---|
| ███████████████████████ | | | | |
| BHATE ENVIRONMENTAL ASSOCIATES INC<br>1608 13TH AVE S STE 300<br>BIRMINGHAM, AL  35205-5573 | XX_FMILL | 2526012 | (g) | 7196 9008 3950 2600 0869 |
| APEX MULTIFAMILY BUILDERS<br>3001 S LAMAR BLVD STE 300<br>AUSTIN, TX  78704-4799 | XX_FMILL | 2526012 | (p) | 7196 9008 3950 2600 0852 |

END: XX_FMILL 2526012 for Client 4265  L&W SUPPLY CORPORATION          (+g+p)

POSTAGE TOTALS
Postage: $4.14.
Certified: $29.10
Electronic RR: $15.72
TOTAL: $48.96

| Total Number of Pieces Listed by Sender | Total Number of Pieces Received by Post Office | Postmaster, Per (name of receiving employee) |
|---|---|---|
| 6 | 6 | *[signature]* |

**UNITED STATES**
**POSTAL SERVICE**™

Date Produced: 01/13/2025

ASSET RESEARCH SERVICES, INC:

The following is the delivery information for Certified Mail™ item number 7196 9008 3950 2600 0852.
Our records indicate that this item was delivered on 01/10/2025 at 03:54 p.m. in AUSTIN, TX 78704. The
scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        d0002526912b034500r1075666PTR